CT Corporation

**TO:**   Michelle Haynes
Soo Line Corporation
120 S 6TH ST STE 1000
MINNEAPOLIS, MN 55402-1813

**RE:**   **Process Served in Wisconsin**

**FOR:**   Soo Line Railroad Company  (Domestic State: MN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TRISHA M. BABLER and DAVID G. BABLER, Pltfs. and United Healthcare Insurance Company, Involuntary Pltf. vs. Soo Line Railroad Co. and SPRINKMANN SONS CORPORATION, Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified Case # 2021CV000395 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Madison, WI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/26/2021 at 11:11 |
| **JURISDICTION SERVED :** | Wisconsin |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/26/2021, Expected Purge Date: 01/31/2021 |
| | Image SOP |
| | Email Notification,  Bill Tuttle  bill_tuttle@cpr.ca |
| | Email Notification,  Michelle Haynes  michelle_haynes@cpr.ca |
| | Email Notification,  Michael Novak  mike_novak@cpr.ca |
| | Email Notification,  Kathy Collum  kathy_collum@cpr.ca |
| | Email Notification,  Claire Smith  claire_smith@cpr.ca |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System 301 S. Bedford Street Suite 1 Madison, WI 53703 |

**Exhibit D**

 CT Corporation

**TO:** Michelle Haynes
Soo Line Corporation
120 S 6TH ST STE 1000
MINNEAPOLIS, MN 55402-1813

**RE:** **Process Served in Wisconsin**

**FOR:** Soo Line Railroad Company  (Domestic State: MN)

866-331-2303
CentralTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Exhibit D



FILED
01-21-2021
John Barrett
Clerk of Circuit Court
2021CV000395
Honorable Laura Gramling
Perez-32
Branch 32

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE**

Trisha M. Babler et al vs. Soo Line Railroad Co. et al          **Electronic Filing Notice**

Case No. 2021CV000395

Class Code: Asbestos

SOO LINE RAILROAD CO.
301 S. BEDFORD ST., STE 1
MADISON WI 53703

Case number 2021CV000395 was electronically filed with/converted by the Milwaukee County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a $20.00 fee to register as an electronic party.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: c52b3a**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 414-278-4120.

Milwaukee County Circuit Court
Date: January 21, 2021

FILED
01-21-2021
John Barrett
Clerk of Circuit Court
2021CV000395
Honorable Laura Gramling
Perez-32
Branch 32

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE COUNTY**

TRISHA M. BABLER and
DAVID G. BABLER
N9600 Van Dyne Road
Van Dyne, WI 54979

       Plaintiffs,

UNITED HEALTHCARE INSURANCE COMPANY
c/o Its Registered Agent, CT Corporation System
301 S. Bedford Street, Suite 1
Madison, WI 53703

       Involuntary Plaintiff,

v.

SOO LINE RAILROAD CO.,
c/o Its Registered Agent, CT Corporation System
301 South Bedford Street, Suite 1
Madison, WI 53703

SPRINKMANN SONS CORPORATION
c/o William E. Sprinkmann
12100 W. Silver Spring Road
Milwaukee, Wisconsin 53225,

       Defendants.

**SUMMONS**

Case No:_____
Classification Code:30108 Asbestos

---

THE STATE OF WISCONSIN

To each person named above as a defendant:

You are hereby notified that the plaintiffs named above have filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in chapter 8023 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is 901 N. 9th St., Milwaukee, Wisconsin, and to

1

the plaintiff's attorney, whose address is 330 East Kilbourn Avenue, Milwaukee, Wisconsin. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgement awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated at Milwaukee, Wisconsin this 21st day of January, 2021.

By: *Electronically signed by Thadd J. Llaurado*
Thadd J. Llaurado
State Bar No: 1000773
Keith R. Stachowiak
State Bar No: 1000050
Kathryn C. Llaurado
State Bar No: 1095288
MURPHY & PRACHTHAUSER, S.C.

P.O. ADDRESS:
330 East Kilbourn Avenue, Suite 1200
Milwaukee, WI 53202
(414) 271-1011 (phone)
(414) 271-9987 (fax)
tllaurado@murphyprachthauser.com
kstachowiak@murphyprachthauser.com
kllaurado@murphyprachthauser.com


Charlie Stern
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. ADDRESS:
P.O. Box 4160
Montgomery, Alabama 36103
(334) 269-2343 (phone)
(334) 954-7555 (fax)
Charlie.Stern@BeasleyAllen.com

2

FILED
01-21-2021
John Barrett
Clerk of Circuit Court
2021CV000395
Honorable Laura Gramling
Perez-32
Branch 32

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE COUNTY**

TRISHA M. BABLER and
DAVID G. BABLER
N9600 Van Dyne Road
Van Dyne, WI 54979

      Plaintiffs,

UNITED HEALTHCARE INSURANCE COMPANY
c/o Its Registered Agent, CT Corporation System
301 S. Bedford Street, Suite 1
Madison, WI 53703

      Involuntary Plaintiff,
v.

SOO LINE RAILROAD CO.,
c/o Its Registered Agent, CT Corporation System
301 South Bedford Street, Suite 1
Madison, WI 53703

SPRINKMANN SONS CORPORATION
c/o William E. Sprinkmann
12100 W. Silver Spring Road
Milwaukee, Wisconsin 53225,

      Defendants.

**COMPLAINT**
Case No.: _____
Classification Code:30108 Asbestos

---

NOW COME the PLAINTIFFS, TRISH M. BABLER and DAVID G. BABLER, by and through their attorneys, and complain of the DEFENDANTS as follows:

**JURISDICTION**

1.    PLAINTIFFS, Trish M. Babler ("BABLER") and David G. Babler ("Mr. Babler"), individuals, are citizens of Van Dyne, Wisconsin, (hereinafter referred to collectively as "PLAINTIFFS").

2.    Defendant Soo Line Railroad Company ("SLR") is a Minnesota Corporation registered to do busines in, and was at all times relevant herein, engaged in substantial business in the

1

State of Wisconsin. The statutory agent for service of process upon Soo Line Railroad Company is CT Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin. At all times material hereto, SLR was engaged in the railroad industry. SLR owned and operated facilities, tracks, railcars, cabooses and railroad-related items in the state of Wisconsin during the relevant time period, specifically the Fond Du Lac, Wisconsin SLR facility and equipment. Furthermore, SLR does substantial business in Milwaukee County and the State of Wisconsin. At all times relevant, SLR was a subsidiary of the Canadian Pacific Railway.

3.      Sprinkmann Sons Corp. ("Sprinkmann") is a Wisconsin corporation with its principal place of business in Wisconsin. Sprinkmann is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of Wisconsin, with its principal place of business located at 12100 W. Silver Spring Road, Milwaukee, WI 53225. At all times material hereto, Sprinkmann was authorized to do business in the State of Wisconsin and was engaged in the business of designing, manufacturing, processing, importing, converting, compounding, supplying, installing, replacing, repairing, using, and/or selling substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal, repair and installation of asbestos containing insulation. Furthermore, the Defendant, Sprinkmann does substantial business in Milwaukee County and the State of Wisconsin.

4.      United Healthcare Insurance Company is named in this complaint pursuant to Wis. Stat. §§803.03 as a party that may have a right to subrogation. Involuntary Plaintiff, United Healthcare Insurance Company, is a foreign insurance corporation, with offices of its Registered Agent, CT Corporation System located at 301 S. Bedford St. Suite 1, Madison, Wisconsin; that United Healthcare Insurance Company has paid medical and related expenses on behalf of the Plaintiff, BABLER, as a result of the injuries she sustained as hereinafter set forth and may be so

2

obliged in the future; that United Healthcare Insurance Company may have no legal right to subrogation or reimbursement despite its payment of benefits in the past or the future, but by reason of such payments, United Healthcare Insurance Company is a proper party herein.

## DEFINITIONS

5.    "Asbestos and/or asbestos-containing/contaminated products," "asbestos-containing products" or "Asbestos Products" as used in this Complaint mean asbestos, asbestiform talc, asbestiform fibers, as well as any and all materials, products, component products, replacement parts, and/or manufactured goods containing or including asbestos and/or asbestiform fibers in whole or in any mixture (including as a contaminant) with other materials manufactured, marketed, sold, distributed and/or used for any and all purposes, including, but not limited to railroad equipment, such as brakes, heat shields, piping, gaskets, packing, electrical equipment, insulation in ceiling and walls of cabooses and incorporated in passenger cars, and insulation and construction-related equipment used at the SLR Fond Du Lac, WI facility, among other things.

6.    "Contractor Defendant" as used in this Complaint means Sprinkmann, who is being sued in the capacity of a contractor serving, working, being present, in control of or directing work at any of the at-issue premises, specifically the SLR facility in Fond Du Lac, WI, and whose work directly and/or indirectly resulted in asbestos exposures.

7.    "Railroad Defendant," as used in this Complaint means the Defendant SLR, who is being sued in the capacity of a railroad and premise owner and/or the entity in control of any of the at-issue premises, specifically the SLR facility in Fond Du Lac, WI, but also including SLR trains and railroads, where work with and around asbestos-containing products resulted in asbestos exposures.

## GENERAL ALLEGATIONS

3

8.     BABLER's father, Thomas Priebe ("PRIEBE") was employed by the SLR from the early 1960s until around 1989. During this time, PRIEBE served in a variety of capacities with the SLR and worked out of the Fond Du Lac, WI facility. During the majority of the time, PRIEBE was a "brakeman." That job involved inspecting couplings, hand brakes, air hoses, and other train parts. PRIEBE traveled aboard the SLR trains and was away from his home for days at a time. Generally, when PRIEBE was traveling aboard the trains as a brakeman, if he was not performing his job duties as described above, he would spend the vast majority of his time in the SLR cabooses. During the 1960s, PRIEBE also served as a "conductor" on SLR passenger trains. During this time, he rode and worked on various passenger trains. Additionally, PRIEBE spent time at the SLR Fond Du Lac facility during his employment, as that was the local SLR facility that he worked out of.

9.     While engaged in the performance of his duties as a brakeman and an employee of SLR, PRIEBE was required to work with and around various asbestos-containing materials. These asbestos-containing materials included asbestos-containing brakes, asbestos-containing heat shields incorporated into or around the stoves of the cabooses, asbestos-containing spark shields within the cabooses, asbestos-containing walls and ceilings within the cabooses and/or asbestos-containing pipe insulation which was incorporated into some of SLR's cabooses. Similarly, as a conductor on passenger trains, PRIEBE worked around various asbestos-containing materials, including piping insulation and steam generators, among other things. Additionally, while at the Fond Du Lac, WI SLR facility, various repair and maintenance work was performed in the vicinity of PRIEBE by Sprinkmann that exposed him to asbestos fibers, including work on steam pipes and renovation work at the facility.

4

10.     Sprinkmann was a contracting company and performed various kinds of maintenance work at the Fond Du Lac, WI SLR facility during the relevant time period. This maintenance included work on asbestos-containing thermal insulation associated with pipes and other asbestos-containing construction/building materials.

11.     BABLER was born on May 5, 1964. From that date until her marriage in 1984, BABLER lived at the family home located 2816 Lakeshore Drive, Fond Du Lac, WI.[1] Upon information and belief, during this entire time, PRIEBE was employed by the SLR and performed the job duties described above. From the date of BABLER's birth until she moved out of the family home in 1984, PRIEBE's work with and around asbestos-containing products and materials resulted in BABLER being exposed to asbestos. This occurred due to the fact that PRIEBE would wear the same bib-like coveralls to work, work with and around the various asbestos-containing products and materials, be exposed to asbestos fibers and then transmit said asbestos fibers into the family home, resulting in BABLER being exposed to said fibers. The asbestos fibers on PRIEBE were transmitted into the family car and the family home. For much of this time, BABLER was responsible or, at the very least, assisted her mother with the domestic duties, which included washing PRIEBE's work clothes, sweeping the house and cleaning out the car. BABLER frequently went with her mother to pick up PRIEBE from the Fond Du Lac SLR facility after PRIEBE completed a trip, so she entered the facility's confines with regularity and frequency. PRIEBE would still be wearing his dirty, asbestos-covered work clothes. Prior to entering the family car, it was common for BABLER to greet her father with a hug and a kiss in the parking lot of the facility, which was part of the SLR premises. Both of these actions, greeting her father and him entering the family car, exposed BABLER, who frequented the SLR premises in this

---

[1] At some point the address for that home changed. Presently, that location has the address of N8543 Lakeshore Drive, Fond Du Lac, WI.

manner, to asbestos dust, which she breathed on the SLR premise/property. Additionally, it was common that when PRIEBE returned home he would enter the family home and greet his family again, including BABLER, with a hug and kiss while still wearing his dirty, asbestos-covered work clothes. During all of these actions, BABLER was exposed to asbestos fibers and breathed in said fibers. Notably, the laundry machine at the family home was located in the kitchen of the home, which was the central gathering place for the family, and PRIEBE always stored his dirty work clothes in that general area.

12.    From May 5, 1964 until she left the family home in 1984, BABLER was routinely and repeatedly exposed to asbestos fibers in the manners described above. As a result of these routine and repeated exposures to asbestos, BABLER was diagnosed with terminal mesothelioma on September 11, 2020.

13.    At all times relevant, PRIEBE and PLAINTIFFS were unaware of the dangerous propensities of asbestos and asbestos-containing products that they were around.

14.    During all relevant time periods, SLR was engaged in the railroad industry within the state of Wisconsin and elsewhere. SLR utilized numerous asbestos-containing products and materials in the course of operating its facilities, railroads, passenger cars, freight cars and cabooses.

15.    Due to the routine and repeated work required of PRIEBE as a SLR employee, PRIEBE was exposed to harmful amounts of asbestos and asbestos-containing dusts which were generated as result of the liberation of asbestos and asbestos-containing products which had been placed into equipment by SLR, incorporated into SLR's facilities, disturbed via maintenance at said facilities by Sprinkmann, incorporated into passenger cars, freight cars and cabooses, and/or specified for purchase and use by SLR. BABLER was, in turn, exposed to this asbestos in the

6

ways described above.

16.    Because of SLR's specialized knowledge and expertise in the design, manufacture, and engineering of products for a specialized sector (railroads), SLR knew, or in the exercise of reasonable diligence, should have foreseeably known, that such exposures to BABLER were bound to occur, and in fact, did occur with frequency as a result of PRIEBE's job duties. Similarly, SLR knew, or in the exercise of reasonable diligence, should have foreseeably known, that such exposures were not limited to PRIEBE and he would then, through no fault of his own, unknowingly expose his family to said asbestos fibers, including BABLER.

17.    By the 1960s, it was well known in the medical, industrial (including the railroad industry) and scientific communities that asbestos dust could be carried from one location to another, and people exposed at a second location were at risk of developing asbestos-related diseases. The DEFENDANTS knew, or in the exercise of reasonable diligence, should have foreseeably known the exposures alleged in this Complaint, commonly referred to as "take-home exposures" were a risk to BABLER's health. This information was known by the 1960s in the medical, industrial (including the railroad industry) and scientific communities.

## CLAIM 1

## NEGLIGENCE AGAINST RAILROAD DEFENDANT - SLR

18.    PLAINTIFFS incorporate by reference into Claim 1 all other relevant allegations in this complaint.

19.    PRIEBE worked at premises and aboard trains owned and/or controlled by SLR/Railroad Defendant at which he was exposed to asbestos products and dust from asbestos products.

20.    During the relevant times, SLR knew or should have known of the dangers of

7

asbestos and the foreseeable risk that respirable asbestos fibers would be and were disturbed and became respirable by individuals around said work and on the premises. Despite this knowledge and the foreseeable risk, SLR failed to properly repair, remove and abate said asbestos at its Fond Du Lac facility and aboard its trains, including its cabooses, freight and passenger trains, thereby creating a condition which posed a danger to all who entered the premises and trains and individuals who came in contact with those who had entered the premises and worked aboard the trains. SLR did not warn of nor cure this dangerous condition.

21.    While present on premises and trains owned, occupied, and/or controlled by SLR, PRIEBE was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by SLR, who had the responsibility for such. As a result, PRIEBE was exposed to this asbestos and asbestos-containing dust, unknowingly carried it home on his person, and BABLER was exposed to said asbestos dust. PRIEBE's exposure to SLR's asbestos was caused by numerous, distinct working situations, including but not limited to:

a.    His work, including his mere presence, in various areas of the Fond Du Lac SLR facility while asbestos-containing materials were removed, repaired and/or disturbed;

b.    His work, including his mere presence, in cabooses while performing his duties as a brakeman;

c.    His work, including his mere presence, in passenger cars while performing his duties as a conductor; and

d.    Exposures to asbestos-containing brake materials associated with the SLR railcars while aboard the cabooses, standing outside the trains and inspecting said brakes.

8

22.    Following this work, BABLER would be exposed to said asbestos when PRIEBE entered the family car, entered the family home, upon greeting his daughter with a hug and kiss, when BABLER assisted with or performed laundry duties, swept the house, swept the car and numerous other ways.

23.    BABLER's injuries and diseases were the result of intentional acts, omissions, negligence and intentional disregard in the use of asbestos by SLR.  SLR failed to properly remove, repair, and abate said asbestos and continued to use asbestos-containing products at the Fond Du Lac facility and aboard its trains while PRIEBE was employed by SLR and BABLER lived at the family home.

24.    SLR was negligent, intentionally disregarded, and committed certain intentional acts, all of which were the proximate cause of the disease and injuries resulting from BABLER's mesothelioma from exposure to asbestos.

25.    SLR demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of BABLER, and that such intentional acts and omissions proximately caused BABLER's disease and injuries.

26.    Specific intentional acts and acts constituting negligence and intentional disregard committed by SLR that proximately caused BABLER's injuries and disease include:

  a.    Failure to provide safe equipment for those working with and around asbestos-containing products so as to limit asbestos fibers being carried off the premises and trains so that BABLER was not exposed;

  b.    Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite SLR's knowledge of the

9

extreme risk of harm inherent to asbestos exposure, so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

c.   Failure to adequately warn PRIEBE and those working with and around him of the inherent dangers of asbestos contamination and risk of exposing others to asbestos-containing dust so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

d.   Failure to maintain the ambient and environmental conditions of the premises and trains in proper and safe condition so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

e.   Failure to take adequate precautions to ensure that workers did not carry asbestos-containing dust off the premises and trains back to their homes so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

f.   Failure to adhere to industry safe standards and other established measures to protect workers and others, such as BABLER, from harm;

g.   Failure to take adequate precautions to ensure that SLR workers did not improperly disturb asbestos fibers and cause BABLER to breath those fibers;

h.   Failure to post adequate signage indicating that asbestos fibers were being disturbed so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

10

i. Failure to cordon off areas where asbestos-containing products were being worked on and/or maintained to eliminate exposures at other parts of the premises so as to limit asbestos fibers from being carried off the premise and trains so that BABLER was not exposed;

j. Failing to provide proper protective gear for individuals exposed to asbestos so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

k. Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

l. Failing to provide a proper and safe method for the use of asbestos and asbestos fibers so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

m. Failing to adhere to industry safe standards and other established measures to protect workers from harm so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

n. Failing to adequately warn of the extreme risk of danger inherent to asbestos exposure so as to limit asbestos fibers from being carried off the premises and trains so that BABLER was not exposed;

o. Failing to ensure that workers and others on the premises did not carry asbestos fibers off the premises and trains where they could injure and harm others, such as BABLER; and/or

p. Failing to warn that asbestos fibers carried off or spread around the premises

11

could injure and harm other individuals, such as BABLER.

27.     Such SLR actions and omissions were unreasonable and created an unreasonable risk of injury to others, including BABLER.

28.     SLR demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of BABLER.

## CLAIM 2

## NEGLIGENCE AGAINST CONTRACTOR DEFENDANT - SPRINKMANN

29.     PLAINTIFFS incorporate by reference into Claim 2 all other relevant allegations in this complaint.

30.     The injuries of BABLER are a direct and proximate result of the negligence of Sprinkmann.  Sprinkmann created hazardous and deadly conditions which caused BABLER to be exposed to a large amount of asbestos fibers.

31.     During the relevant times, Sprinkmann knew or should have known of the dangers of asbestos and the foreseeable risk that respirable asbestos fibers would be created when disturbed and that said asbestos fibers would be carried home by workers in the general vicinity of Sprinkmann's work.  These fibers were a risk to people at said homes, such as BABLER.  Despite this knowledge and the foreseeable risk, Sprinkmann failed to properly provide maintenance work, such as repair, remove and abate said asbestos at the Fond Du Lac facility, thereby creating a condition which posed a danger to all who entered the premises, worked around Sprinkmann or in the general vicinity of Sprinkmann, and individuals who came in contact with those who had entered the premises, such as BABLER.  Sprinkmann did not warn of or cure this dangerous condition.

12

32.     Such Sprinkmann actions and omissions were unreasonable and created an unreasonable risk of injury to others, including BABLER.

33.     While present on premises and portions of premises that were at times under the control or shared control of Sprinkmann, PRIEBE was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Sprinkmann, who had the shared responsibility for such. Sprinkmann failed to use care that would be considered reasonable, prudent, skilled and in good judgment. As a result, BABLER was exposed to this asbestos and asbestos-containing dust when carried home and into the family car by PRIEBE.

34.     BABLER's injuries and diseases were the result of intentional acts and omissions and negligence and intentional disregard in the use of and work with asbestos by Sprinkmann. Sprinkmann failed to properly repair, remove and abate said asbestos and Asbestos Products at SLR during the time PRIEBE was working there.

35.     Sprinkmann was negligent, intentionally disregarded, and committed certain intentional acts, all of which were the proximate cause of BABLER's disease and injuries resulting in mesothelioma from exposure to asbestos.

36.     Sprinkmann demonstrated such an entire want of care as to establish that its acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of BABLER, and that such intentional acts and omissions proximately caused BABLER's disease and injuries.

37.     Specific intentional acts and acts constituting negligence and intentional disregard committed by Sprinkmann that proximately caused BABLER's injuries and disease include:

> a.     Failure to provide safe equipment for those working with and around asbestos-containing products so as to limit asbestos fibers from being

13

carried off the premises so that BABLER was not exposed;

b.  Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite Sprinkmann's knowledge of the extreme risk of harm inherent to asbestos exposure, so as to limit asbestos fibers from being carried off the premises so that Babler was not exposed;

c.  Failure to adequately warn PRIEBE and those working with and around him of the inherent dangers of asbestos contamination and risk of exposing others to asbestos-containing dust so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

d.  Failure to maintain the ambient and environmental conditions of the premises in proper and safe condition so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

e.  Failure to take adequate precautions to ensure that workers did not carry asbestos-containing dust off the premises back to their homes so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

f.  Failure to adhere to industry safe standards and other established measures to protect workers and others, such as BABLER, from harm;

g.  Failure to take adequate precautions to ensure that Sprinkmann workers did improperly disturb asbestos fibers, resulting in PRIEBE carrying home asbestos fibers, which caused BABLER to breath those fibers;

h.  Failure to post adequate signage indicating that asbestos fibers were being

14

disturbed so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

i.   Failure to cordon off areas where asbestos was being worked on to eliminate exposures at other parts of the premises so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

j.   Failing to provide proper protective gear for individuals exposed to asbestos so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

k.   Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

l.   Failing to provide a proper and safe method for the use of asbestos and asbestos fibers so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

m.   Failing to adhere to industry safe standards and other established measures to protect workers from harm so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

n.   Failing to adequately warn of the extreme risk of danger inherent to asbestos exposure so as to limit asbestos fibers from being carried off the premises so that BABLER was not exposed;

o.   Failing to ensure that workers and others on the premises did not carry asbestos fibers off the premises where they could injure and harm others, such as BABLER; and/or

15

  p.  Failing to warn that asbestos fibers carried off or spread around the premises could injure and harm other individuals, such as BABLER.

38. Sprinkmann intentionally, knowingly, and due to negligence and intentional disregard, failed to ensure that individuals such as BABLER were protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused BABLER's injuries and illness.

39. Sprinkmann demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of BABLER.

## CLAIM 3

### VIOLATION OF THE SAFE PLACE ACT AGAINST SLR

40. All of the relevant allegations contained in the previous paragraphs are realleged herein.

41. PRIEBE was an employee of SLR and worked out of the SLR Fond Du Lac, WI facility. SLR was an employer of individuals working at the SLR Fond du Lac, WI facility, including PRIEBE and numerous other employees.

42. The SLR Fond Du Lac, WI facility and SLR trains were maintained, owned, controlled, and/or operated by SLR.

43. SLR violated its duty to BABLER by failing to prevent and control asbestos exposures from occurring at the SLR Fond Du Lac, WI facility. BABLER frequented the SLR facility with her mother between 1964 and 1984 to pick up PRIEBE after he had been on the trains and/or spending time in the Fond Du Lac facility while repair work had been done in his vicinity. During this time, PRIEBE was wearing his dirty, asbestos-covered work clothes, and while on the SLR premises, he transmitted said asbestos-dust into the family car where BABLER was exposed.

16

Additionally, prior to PRIEBE entering the family car, it was common for BABLER to greet her father with a hug and a kiss in the parking lot of the facility, which was part of the SLR premises/property. Both of these actions exposed BABLER to asbestos dust on the grounds of the SLR premises, which she breathed.

44.     SLR had duties under Wis. Stat. § 101.11 to maintain a safe workplace for employees and "frequenters" of SLR's Fond Du Lac facility.

45.     SLR violated its duties under Wis. Stat. §101.11 by failing to prevent and control asbestos exposures to BABLER.

46.     As a direct and proximate result of the SLR's violations of the Safe Place Act, BABLER suffered and incurred the damages previously articulated.

## ClAIM 4

## (PLEAD IN THE ALTERNATIVE)

## VIOLATION OF FEDERAL SAFETY STATUTE AGAINST SLR

### (Negligence *Per Se*)

47.     PLAINTIFFS re-allege the previous paragraphs as if restated here verbatim.

48.     During all relevant time periods, a federal act was in effect known as the Federal Safety Appliance Acts (49 U.S.C. §20101, et seq., formerly *45* U.S.C. §1, et seq.) ("SAA").

49.     PLAINTIFFS deny that the SAA covers, displaces, or in any way imposes a pre-emptive effect on their state law negligence cause of action against SLR. Should it be determined that the SAA covers, regulates, displaces or preempts any part of PLAINTIFFS' state law cause of action or claims for relief, then and in that sole event, PLAINTIFFS assert an alternative cause of action for violation of the SAA; such violations being cognizable under state law and susceptible to Wisconsin tort remedies.

17

50.     For purposes of this alternative cause of action only, PLAINTIFFS allege BABLER is among the class of persons the SAA was intended to protect by Congress.

51.     For purposes of this alternative cause of action only, PLAINTIFFS allege that BABLER was exposed to asbestos because of PRIEBE's working around and due to his repairing, inspecting and renovating defective "safety appliances" as that term is defined under the SAA, specifically asbestos-containing brakes associated with the SLR trains.

52.     For purposes of this alternative cause of action only, PLAINTIFFS allege that SLR violated the SAA by using safety appliances which were defective and in an unsafe condition and which were unsafe to work on or about without unnecessary peril to BABLER's life or limb.

53.     For the purposes of this alternative cause of action only, PLAINTIFFS allege that as a direct and proximate result of the PRIEBE's contact and proximity to said defective safety appliances, BABLER was exposed to injurious quantities of asbestos fibers and dust on a frequent and regular basis, all of which constituted the factual and proximate cause of her injury, cancer, and damages, as previously described herein.

## CLAIM 5

## LOSS OF CONSORTIUM

54.     PLAINTIFFS re-allege all paragraphs as if restated here verbatim.

55.     Mr. Babler alleges that he has been the lawfully married and loving husband of BABLER from July 14, 1984 until the present.

56.     As a result of the disability, pain and incapacitation of BABLER caused by her malignant mesothelioma, which will also result in her further incapacitation, deterioration, pain, suffering, medical costs and, eventually, death, Mr. Babler is currently and will in the future be deprived of the services, guidance, love, physical consortium, companionship and

18

care of his wife, resulting in his legal injury under law.

## INTENTIONAL DISREGARD AND EXEMPLARY DAMAGES

57.    The actions and inactions of all DEFENDANTS, as specifically alleged herein above, whether taken separately or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or omissions resulting in the damages and disease alleged. More specifically, the DEFENDANTS consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or intentional disregard with regard to BABLER and should be held liable in punitive and exemplary damages.

58.    Additionally, the actions, omissions, and/or undertakings of DEFENDANTS were of such a character as to make them guilty of intentional disregard. The conduct of DEFENDANTS was deliberate, an actual disregard of BABLER's safety and was sufficiently aggravated to warrant punishment by punitive damages. In addition, DEFENDANTS had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others. As a result of the conduct of DEFENDANTS, PLAINTIFFS seek exemplary damages in such an amount as to be found to be proper under the facts and circumstances.

## DAMAGES

59.    PLAINTIFFS seek the following general and special damages including, but not limited to:

      a.      For the physical pain and suffering sustained by BABLER;

      b.      For the mental anguish and emotional fear sustained by BABLER;

      c.      For the physical impairment suffered by BABLER;

      d.      For the disfigurement suffered by BABLER;

      e.      For the reasonable and necessary medical expenses incurred by

19

PLAINTIFFS;

f.      For BABLER's lost wages;

g.      For BABLER's lost retirement earning capacities;

h.      For the pecuniary loss, household services, companionship and society which Mr. Babler received from BABLER prior to her illness. And for his damages for loss of marital consortium, which will continue to accrue;

i.      For punitive and exemplary damages as allowed by law;

j.      For pre-judgment interest on all elements of damages as allowed by Wisconsin law; and

k.      For all other actual, compensatory, punitive and exemplary damages recoverable pursuant to the law, including costs of suit.

## JURY DEMAND

60.     PLAINTIFFS demand that all issues of fact in this case be tried to a Jury.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS demand judgment against the DEFENDANTS, for money damages for the injuries suffered as herein alleged, in an amount to be determined by the trier of fact; together with applicable interest, costs and all other relief permitted by law.

By: *Electronically signed by Thadd J. Llaurado*
Thadd J. Llaurado
State Bar No: 1000773
Keith R. Stachowiak
State Bar No: 1000050
Kathryn C. Llaurado
State Bar No: 1095288
MURPHY & PRACHTHAUSER, S.C.

20

P.O. ADDRESS:
330 East Kilbourn Avenue, Suite 1200
Milwaukee, WI  53202
(414) 271-1011 (phone)
(414) 271-9987 (fax)
tllaurado@murphyprachthauser.com
kstachowiak@murphyprachthauser.com
kllaurado@murphyprachthauser.com

Charlie Stern
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. ADDRESS:
P.O. Box 4160
Montgomery, Alabama 36103
(334) 269-2343 (phone)
(334) 954-7555 (fax)
Charlie.Stern@BeasleyAllen.com

**Exhibit D**