# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRISHA BABLER and DAVID
BABLER,

|                      | Plaintiffs, | Case No. 22-CV-560-JPS |

v.

SOO LINE RAILROAD COMPANY,                    **ORDER**

                      Defendant,

This case comes before the Court on Plaintiffs' motion to remand. ECF No. 10. For the reasons explained below, the Court will grant the motion and remand the case back to the Milwaukee County Circuit Court.

## 1.    BACKGROUND

Trisha Babler ("Mrs. Babler") is dying from mesothelioma, a fatal cancer caused by asbestos exposure. ECF No. 10 at 1. Plaintiffs' action maintains that Mrs. Babler's mesothelioma was caused by "take-home" asbestos exposures. *Id.* Specifically, Plaintiffs allege that Mrs. Babler's father, Tom Priebe ("Priebe"), who worked around asbestos dust as a Soo Line Railroad Company ("SLR") employee, unknowingly brought asbestos home on his clothes, thus exposing his daughter, Mrs. Babler, via personal and close contact.

On January 21, 2021, Plaintiffs filed their case in the Milwaukee County Circuit Court. *Id.* In their complaint, Plaintiffs named Sprinkmann Sons Corporation ("Sprinkmann") as a defendant, namely for its alleged activity related to "designing, manufacturing, processing, importing, converting, compounding, supplying, installing, replacing, repairing,

using, and/or selling substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal, repair and installation of asbestos containing insulation." ECF No. 1-4 at 7.

According to Plaintiffs, they named Sprinkmann as a defendant based on inferences that Sprinkmann was either a contractor at the North Fond du Lac SLR facility and/or supplied asbestos-containing materials to SLR for use at that facility. First, it appears that Sprinkmann's "mother company" was (and is) based in Milwaukee, about fifty-five miles from the former North Fond du Lac, Wisconsin SLR railyard at issue in this case. ECF No. 10 at 3. Second, Plaintiffs obtained interrogatory responses from previous asbestos cases, which identified Sprinkmann as a Milwaukee-based supplier and contractor of asbestos products. *Id.*; *see* ECF No. 12-4 at 3. Third, during a visit that Plaintiffs' counsel made to the Soo Line Historical and Technical Society prior to filing suit, counsel found records indicating that there had been "major construction"[1] and contract work done at the North Fond du Lac SLR facility. Much of this work suggested the use of asbestos materials and occurred during Priebe's employment there. ECF No. 10 at 4. While the names of the contractors were not contained in these documents, Plaintiffs' counsel *inferred* that Sprinkmann was *possibly* one of the unnamed contractors, given its work supplying asbestos materials during the relevant time period. *Id.* Put simply, Plaintiffs concluded that the materials for the contract work likely contained asbestos, that Sprinkmann likely contributed to the construction project

---

[1]SLR responds that this "major construction" was, rather, a replacement of two doors and a remodeling of the air brake in one of the shops, with an estimated cost of about $5,000 at the time. ECF No. 17 at 2.

considering its line of business and location, and that Priebe was exposed to the asbestos when the work was done because he was an SLR employee. At the time Plaintiffs filed their complaint, however, there were no documents linking Sprinkmann to SLR; no documents or testimony have *ever* been discovered that link Sprinkmann to SLR.

The same day that Plaintiffs filed their complaint, they served Sprinkmann with requests for production and interrogatories. *Id.* at 5. Sprinkmann served Plaintiffs with discovery on February 16, 2021. *Id.* Plaintiffs responded to that discovery on March 18, 2021. *Id.* Following Sprinkmann's response to Plaintiffs' discovery requests, Plaintiffs wrote Sprinkmann's counsel a letter identifying various perceived deficiencies within those responses. *Id.* Plaintiffs requested that these discovery responses be supplemented by August 25, 2021. *Id.* Plaintiffs state that Sprinkmann failed to produce documents responsive to Plaintiffs' discovery requests and that Sprinkmann informed Plaintiffs that records from much of the relevant period may no longer be under Sprinkmann's control. *Id.* at 6.

Thus, contemporaneous with their case-specific discovery, Plaintiffs engaged in third-party discovery, by which they intended to find evidence related to the claims brought against Sprinkmann. *Id.* at 5. Specifically, Plaintiffs worked with Amy Benham ("Benham"), Project Coordinator for the Claims Resolution Management Corporation (the "CRMC") (which maintains one of the largest asbestos-related document repositories in the world as it handles the Johns-Manville bankruptcy trust[2]), to identify the

_____

[2]"The Manville Trust was established in 1988 to resolve all further asbestos personal injury claims resulting from exposure to asbestos and asbestos containing products mined or manufactured by the Johns-Manville Corporation and its

kinds of asbestos-containing products that Sprinkmann was buying in the Milwaukee area at the relevant time. *Id.* According to Plaintiffs, the purpose of this discovery was to determine whether Sprinkmann was buying and selling certain kinds of asbestos materials that were seen by various witnesses in this case. *Id.* SLR responds that Plaintiffs actually were not primarily pursuing Sprinkmann-related discovery from a third-party; instead, they were pursuing a claim against Manville, which they settled on February 22, 2022 for $350,000. ECF No. 17 at 4. Third-party discovery continued through the summer and fall of 2021 and into 2022. ECF No. 10 at 6.

On January 31, 2022, Benham forwarded Plaintiffs' counsel dozens of Sprinkmann invoices (the "Sprinkmann Invoices") from the relevant time period. *Id.* The Sprinkmann Invoices showed that Sprinkmann had purchased asbestos-containing products in Milwaukee. *Id.* The Sprinkmann Invoices reflect that some of the products that Sprinkmann purchased were similar in nature to the asbestos-containing items described by numerous witnesses in this case. *Id.* at 7. Importantly though, none of these documents linked Sprinkmann to SLR. Plaintiffs sent these documents to counsel for Sprinkmann on February 3, 2022. *Id.* That same day, counsel for the Plaintiffs and Sprinkmann discussed these documents, and Plaintiffs informed Sprinkmann that Plaintiffs wanted their expert industrial hygienist to review these documents. *Id.* Some of the Sprinkmann Invoices were sent to Plaintiffs' expert industrial hygienist, Jerome Spear ("Spear"), on March 1, 2022. *Id.* Spear was deposed on March 9, 2022. *Id.*

---

affiliated entities." About the Manville Trust, https://mantrust.claimsres.com/ (last visited July 5, 2022).

Prior to being deposed, Spear drafted an expert report. ECF No. 13-3. Contained therein is a section titled "Asbestos Cement/Silicate Sheeting." *Id.* at 8. Spear reviewed the testimony of SLR workers and opined that asbestos was utilized in the railroad industry in a manner that is similar in nature to the methods and materials described by those witnesses. *See generally id.* Additionally, he opined that "[d]ust from asbestos cement sheeting between the floor and/or wall of the heater in cabooses emitted when the caboose and rolling stock collided also likely contributed to Mr. Priebe's occupational exposure asbestos and subsequent take-home contamination." *Id.* at 11. Plaintiffs "believed" that the material identified in the Sprinkmann Invoices was the same material that the fact witnesses discussed and that Spear opined about. ECF No. 10 at 7.

During his deposition, Spear testified about his review of the Sprinkmann Invoices:

> Q. What does the Sprinkman [sic] file show?
>
> A. As I recall, there's invoices in that particular file. I don't recall—I don't think they are specific to Soo Line, though, but there's invoices in there, different types of asbestos-containing materials.
>
> Q. Do you know why you were asked to review this file?
>
> A. I believe it was related to insulation board underneath the stove in the caboose.
>
> Q. Why do you believe that?
>
> A. Because I was asked to look at that material -- those invoices and see if there's anything in that document that could be similar to that -- what was described by the witnesses as the insulation board underneath the stove.
>
> . . .

Q. Was there anything in [the Sprinkmann Invoices] that you believe was underneath the stoves in any of the cabooses of Soo Line?

A. Most of what's in there appears to be pipe and block insulation, insulation cement. There are some block insulation that is a board-type insulation. That could be material that could have been used underneath the stove.

*Id.* at 7–8.

However, when Sprinkmann's attorney cross-examined Spear, Spear revealed that he was not able to opine, on a more-likely-than-not basis, that the materials identified in the Sprinkmann Invoices were the same materials described by the various witnesses:

Q. What products in those documents has the physical appearance of the material described by Mr. Koepke? We can go to those documents if you want to look through them.

A. Well, the only documents that would reassemble what I noted he described as a white/grayish material on the wall would have been a block material that was an inch, inch and a half thick.

. . .

A. The closest material that would have resembled a sheet that's white or grayish look would have been a block material, Thermobestos' block material that's a flat piece. And there's different dimensions, but generally about an inch, inch and a half thick of sheet material.

Q. Is it your testimony that Thermobestos' black [sic] insulation has an appearance that is similar to press board?

A. Not press board, but it does have appearance of white or grayish material.

Q. Thermobestos is -- those types of thermal insulations are kind of chalky kind of products, are they not?

A. Yes.

Q. They are smooth surfaced?

A. Yes.

Q. So it's true then that Super X, Thermobestos' block material, does not have the appearance of press board. It does not have an appearance where there are big pieces of visible fiber on the surface and it's very rough. True?

A. That's correct. It does not have what I consider to be the appearance of press board.

Q. Are you able to opine to a reasonable degree of industrial hygiene certainty that the material on the wall described by Mr. Koepke was, in fact, either Super X or Thermobestos?

A. No, not as I sit here today.

*Id.* at 8–9. In sum, Plaintiffs' discovery yielded no evidence of Sprinkmann contracting services at SLR's North Fond du Lac facility.

Following this testimony, on March 31, 2022, Sprinkmann filed a motion for summary judgment in the state court. On April 13, 2022, Plaintiffs elected to file a one-sentence response: "Without conceding any facts or arguments made in Sprinkmann Sons Corporation's Motion for Summary Judgment, Plaintiffs do not object to the dismissal of Sprinkmann Sons Corporation from this matter." ECF No. 13-5 at 2. On April 27, 2022, the Milwaukee County Circuit Court dismissed Sprinkmann. ECF No. 17 at 1. On May 12, 2022, SLR removed the action to this Court. ECF No. 1. Plaintiffs now move for remand on the grounds that removal was untimely. ECF No. 10.

Finally, the Court notes the urgency of this matter, as Mrs. Babler's physical health is deteriorating; further, if remanded, this case is set for trial in the Milwaukee County Circuit Court on September 26, 2022. ECF No. 10 at 2.

## 2.     ANALYSIS

A defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court in the first place. 28 U.S.C. § 1441(a). 28 U.S.C. § 1446. Where, as here, a defendant premises removal on diversity jurisdiction, the defendant must demonstrate complete diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). In the present case, there is no dispute that there is complete diversity among the remaining parties and that the amount-in-controversy requirement has been met.

In addition to satisfying the jurisdictional prerequisites, a defendant seeking removal must also satisfy the procedural requirements set forth in 28 U.S.C. § 1446(b), including the timeliness requirement. Generally, a notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b)(1). However, if the initial pleading does not state a removable case, then a notice of removal must be filed "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). No matter when it becomes apparent that a case may be removable, a case may not be removed on the basis of diversity jurisdiction more than one year after commencement of the action, "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).

Here, SLR filed its notice of removal on May 12, 2022—more than a year after the case was filed. SLR argues that the bad-faith exception should

apply. ECF No. 17. According to SLR, the only reason the case could not be removed earlier in the litigation was because of the presence of Sprinkmann, the only non-diverse defendant. *Id.* at 1. And the only reason Sprinkmann was named as a defendant in the first place, SLR alleges, was in bad faith to defeat diversity jurisdiction, as evidenced by the fact that Plaintiffs had no evidence to support their naming Sprinkmann as a defendant and did not object to the state court dismissing Sprinkmann from the action. According to SLR, these facts suggest that Plaintiffs knew that their claims against Sprinkmann were never meritorious. Separately, SLR also argues that Plaintiffs fraudulently joined Sprinkmann. However, the Court need not reach the parties' discussion of the bad-faith exception and the fraudulent-joinder doctrine. SLR's notice of removal was untimely under the thirty-day requirement of § 1446(b)(3).

To be clear, § 1446(c)(1) does not void the thirty-day requirement in § 1446(b)(3). Rather, it adds the additional requirement that, unless bad faith is shown, a case cannot be removed after one year, even if the grounds for removal do not become apparent until after one year. The policy rationale for this is clear: one year into a suit's existence, the state court has likely made significant progress in adjudicating it. The removing party is still required to remove the case within thirty days of the grounds for removal becoming apparent (e.g., when it becomes apparent that the non-diverse defendant was fraudulently joined or that the plaintiff acted in bad faith).

Here, Plaintiffs filed their action in state court on January 21, 2021. ECF No. 10 at 1. *At the latest*, it became ascertainable that Plaintiffs' claims against Sprinkmann were unmeritorious on March 31, 2022, when

Sprinkmann filed its motion for summary judgment.[3] By that time, all discovery had been conducted and no party had revealed any evidence that Sprinkmann contributed to Plaintiffs' injuries. In its motion, Sprinkmann discussed, at length, the total lack of evidence against it. ECF No. 17-12. In fact, much of Sprinkmann's argument in its motion for summary judgment tracks closely with SLR's response to Plaintiffs' motion to remand. Section 1446(b)(3) contemplates that a motion alone may make the grounds for removal ascertainable. The Court finds that, at the latest, Sprinkmann's motion for summary judgment started the clock on SLR's time to remove the case to federal court.

SLR did not remove the case until May 12, 2022—nearly two weeks after its thirty-day deadline to do so. SLR opted to wait to remove until after Sprinkmann responded to the motion for summary judgment and the state court dismissed Sprinkmann. SLR likely waited as to ensure that the non-diverse party, Sprinkmann, was dismissed and the federal court would, therefore, have subject-matter jurisdiction. However, SLR could have argued to this Court that Sprinkmann's presence in the suit was fraudulent (as it ended up attempting to argue in response to Plaintiffs' motion to remand) and should have been ignored for purposes of subject-matter jurisdiction. SLR was tardy in removing this case, Plaintiffs promptly moved to remand based, in part, on timeliness, and the Court will grant that request and remand this matter back to the Milwaukee County Circuit Court, where it is scheduled to be tried.

---

[3]It appears that SLR was served with a copy of Sprinkmann's motion the same day that Sprinkmann filed it via the state court's electronic docketing system. ECF No. 17-12 at 18.

**3. CONCLUSION**

SLR should have removed this matter earlier than it did if it wanted to proceed in federal court. Its argument that Sprinkmann was fraudulently joined to this matter likely has merit—there has never been a scintilla of evidence that Sprinkmann contributed in any way to Plaintiffs' injury. However, it was this very lack of evidence that triggered SLR's period in which to remove, and, accordingly, the Court cannot reach the merits of SLR's tardy substantive arguments. Based on the above, the Court will grant Plaintiffs' motion to remand and remand the case back to the Milwaukee County Circuit Court.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand, ECF No. 10, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **REMANDED** to the Milwaukee County Circuit Court for all further proceedings.

The Clerk of the Court is directed to take all appropriate steps to effectuate the remand of this case back to the Milwaukee County Circuit Court.

Dated at Milwaukee, Wisconsin, this 13th day of July, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge